[No. B082169. Second Dist., Div. Seven. Apr. 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR LONGORIA, Defendant and Appellant.

**COUNSEL**

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Scott Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—The sole issue is whether appellant, when he committed a battery against Officer Nagle, inflicted an injury upon Officer Nagle within the meaning of Penal Code[1] section 243, subdivision (c). We find substantial evidence of such injury and affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND

The charges against appellant were battery with injury upon Officer Hildahl (§ 243, subd. (c); count I), battery with injury upon Officer Nagle (§ 243, subd. (c); count II), and disobeying a court order, a misdemeanor (§ 166, subd. (a)(4); count III). Two state prison robbery convictions were also alleged (§ 667.5, subd. (b)). Appellant pleaded guilty to count III, not guilty to counts I and II, and denied the two felony conviction allegations. Trial was by jury. At the close of the prosecution case, the prosecution conceded that as to Officer Hildahl (count I), the evidence showed only a battery *without* injury, a misdemeanor. The jury was instructed accordingly. The jury found appellant guilty of misdemeanor battery against Officer Hildahl (§ 243, subd. (b), a lesser included offense, count I) and battery with injury against Officer Nagle,[2] a felony (count II). Appellant admitted the two state prison robbery conviction allegations. Appellant was sentenced to state prison for five years.

Only two witnesses testified, Los Angeles Police Officers Scott Nagle and his partner Clayton Hildahl. Their testimony was essentially identical. We summarize it with a perspective favoring the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On May 27, 1993, Officers Nagle and Hildahl went to an apartment building at 7945 Willis Avenue in Van Nuys. Apartment No. 7, on the second floor, was vacant and the officers had information about possible trespassers there. They saw two people in the vacant apartment, appellant and another person. When the officers tried to arrest both, appellant escaped by jumping out the window. They arrested the other person.

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.
[2]The jury also found appellant guilty of the lesser included offense, misdemeanor battery, but upon the trial court's direction this verdict was not recorded.

The officers returned to apartment No. 7 on the morning of June 1, 1993. Both were in full uniform. They saw that the front doorknob had been removed and the owner had installed a hasp with a padlock but someone had pried off the hasp from the door frame. Officer Nagle looked through the doorknob hole and saw appellant on the floor, partly covered by a blanket, apparently asleep. Officer Nagle recognized appellant as the person who had escaped a few days earlier.

The officers entered, removed the blanket, saw under it a tire iron, flashlight, and bag of quarters, and handcuffed appellant.

When appellant was on his feet, he asked the officers to loosen the handcuffs and allow him to put his shoes on. Officer Nagle loosened appellant's handcuffs and Officer Hildahl assisted appellant in putting his shoes on.

Officer Nagle, behind appellant and holding the handcuff chain, walked appellant toward the door. As appellant reached the doorway, he "lunged forward . . . and then he kicked back with his right foot." The kick struck Officer Nagle in the groin, his knees buckled and he fell to his knees. Officer Nagle "appeared in a great deal of pain."

Officer Hildahl, who was behind Officer Nagle, dropped the tire iron, flashlight, and bag of quarters, and tried to assist his partner. With Officer Nagle still holding the handcuff chain, the officers pulled appellant into the apartment. Appellant fell back on Officer Nagle, pinning Officer Nagle's right hand between the handcuffs and the floor. While atop Officer Nagle, appellant kicked at Officer Hildahl several times, striking him twice, once on the left inner thigh and once on the left knee. Officer Nagle extricated himself, stood, and sprayed appellant with a pepper spray. When the pepper spray did not immediately incapacitate appellant, the officers requested backup assistance. The pepper spray then took effect. Other officers arrived and transported appellant to the station.

Officer Nagle returned to the station and saw Doctor Flores, who directed him to have his hand X-rayed. Officer Nagle went to Valley Presbyterian Hospital and saw Doctor Stock. Officer Nagle told Doctor Stock about being kicked in the groin and Doctor Stock "advised [him] what to do." Doctor Stock had Officer Nagle's hand X-rayed. There were no broken bones.

Officer Nagle sustained cuts to the inside fingers and bottom side of his right hand. He could not hold his firearm and "had a hard time . . . unwrapping [his] holster." As a result of his injuries, Officer Nagle was

placed on restrictive duty—just answering station phone calls—for three to five days.

DISCUSSION

■ Appellant contends the evidence is insufficient to show Officer Nagle sustained an "injury" within the meaning of section 243, subdivision (c). In considering this contention, we begin by examining the four statutory crimes of battery and their different elements.

■ Section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." However, "[t]he word 'violence' has no real significance. . . . 'It has long been established . . . that "the least touching" may constitute battery. In other words, *force* against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' " (*People* v. *Mansfield* (1988) 200 Cal.App.3d 82, 87-88 [245 Cal.Rptr. 800]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 404, pp. 466-467.) The maximum punishment for this offense, what may be called simple battery, is six months in county jail and a $2,000 fine. (§ 243, subd. (a).)

If, however, the batterer not only uses unlawful force upon the victim but causes injury of sufficient seriousness, then a *felony* battery is committed. For this second category of battery, "serious bodily injury" is required. (§ 243, subd. (d).) Such an injury is defined as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(5).) The maximum punishment for this offense is four years in state prison.

The other two categories of battery involve a special class of victims: peace officers and other specified persons. (§ 243, subds. (b) and (c).) If what would otherwise be a *simple* battery (any unlawful touching, even without causing pain or injury) is committed against, e.g., a peace officer engaged in the performance of his/her duties, then the offense is punishable by *one year* in county jail and a $2,000 fine.

Similarly, a distinction is made when it is a peace officer who is injured by a batterer. Unlike the ordinary victim, for enhanced punishment to be imposed "serious bodily injury" is *not* required. Section 243, subdivision (c) provides that a battery against a peace officer engaged in the performance of his/her duties is punishable by a $2,000 fine and three years in state prison

when "an injury is inflicted on that victim." "Injury" is defined as "any physical injury which requires professional medical treatment." (§ 243, subd. (f)(6).)

■ Appellant asserts that the kick to Officer Nagle's groin was not an "injury" because no "professional medical treatment" was required or given. Similarly, appellant argues the cuts to and crushing of Officer Nagle's right hand were not "injuries" because there was no evidence they required or were given medical treatment. We disagree.

What the statute prescribes as a qualifying injury is an injury which "*requires* professional medical treatment." It is the nature, extent, and seriousness of the injury—not the inclination or disinclination of the victim to seek medical treatment—which is determinative. A peace officer who obtains "medical treatment" when none is required, has *not* sustained an "injury" within the meaning of section 243, subdivision (c). And a peace officer who does *not* obtain "medical treatment" when such treatment is required,[3] *has* sustained an "injury" within the meaning of section 243, subdivision (c). The test is objective and factual. Even when "serious bodily injury" to a nonpeace officer victim must be proved, there need be no medical treatment. It is enough, e.g., that such a victim have suffered a "loss of consciousness" or a "concussion." (§ 243, subd. (f)(5).) It would be anomalous, indeed, to include medical treatment as an element of "injury" but not as an element of "serious bodily injury."

Apposite is *People* v. *Lara* (1994) 30 Cal.App.4th 658 [35 Cal.Rptr.2d 886]. The defendant was charged with committing a battery with injury (§ 243, subd. (c)) against Officer Mank. Another officer stopped defendant for driving with a defective taillight and noticed he was under the influence of a stimulant. When contraband was discovered on defendant, he attempted to run away. Officer Mank tackled defendant. When defendant again attempted to escape, Officer Mank tackled defendant a second time. During the altercation Officer Mank and the other officer hit defendant with either their fists or batons. "Officer Mank bruised both his knees and received numerous cuts and abrasions on his hands. He was also exposed to defendant's blood.[4] As a result, Mank went to the San Jose Emergency Room, where professional medical personnel cleaned his wounds, gave him supplies for scrubbing himself later, checked out [his] knees to make sure there

---

[3] A peace officer might forego medical treatment for many reasons, e.g., on religious grounds, hostility toward doctors, a sense of machismo, or preempting emergencies. Additionally, a peace officer might be *prevented* from obtaining medical treatment. He might be battered and injured by one person, and before obtaining medical treatment, killed by a second person.

[4] Officer Nagle was similarly exposed to appellant's blood because appellant sustained a facial cut during the struggle to subdue him.

was no ligament damage or anything[,] and 'treated the contusions on [his] knees.' " (30 Cal.App.4th at p. 667.)

*Lara* contended, as does appellant, that an "injury" "must be 'sufficiently severe a physician would recommend or perform affirmative acts in intervention, such as minor surgery, suturing, skin grafts, administration of prescription medicines or the like.' " (30 Cal.App.4th at p. 667.)

In rejecting the contention, the Court of Appeal stated "defendant's construction of 'injury' in section 243, subdivision (f)(6), is unreasonably narrow and, in effect, equates 'injury' in that section with serious or great bodily injury in subdivision (f)(5), thereby destroying the legislative distinction between the two. (See § 243, subd. (f)(5); see *People* v. *Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434] ['serious' and 'great' bodily injury are 'substantially the same'].)" (30 Cal.App.4th at p. 667.) We agree.

We find substantial evidence from which a rational trier of fact could have found that Officer Nagle's injuries required professional medical treatment. (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].) His injuries appear to have been more serious and incapacitating than those found legally sufficient in *People* v. *Lara*. Officer Nagle was kicked in the groin and knocked to his knees; the fingers and bottom side of his right hand were cut, and his hand was crushed; he could not hold his firearm and had difficulty unwrapping his holster; he was placed on restrictive phone-answering duty for three to five days. We are satisfied that within the meaning of section 243, subdivision (c), an "injury" was inflicted on Officer Nagle.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 9, 1995, and appellant's petition for review by the Supreme Court was denied July 26, 1995.