IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ZAMARIANNE (a.k.a. JONATHAN) BRADLEY | § § § | No. 549, 2017 |
| Defendant-Below, Appellant, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | |
| STATE OF DELAWARE | § § | ID No. 1604019796 (N) |
| Plaintiff-Below, Appellee. | § § § | |

Submitted: August 22, 2018
Decided: August 24, 2018

Before **VALIHURA, VAUGHN** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Carolyn S. Hake, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**VALIHURA**, Justice:

On August 2, 2017, a jury found Zamarianne Bradley ("Bradley") guilty of first-degree assault of a law enforcement officer and resisting arrest.[1] She now appeals that conviction and the trial court's ruling denying her motion for acquittal. Bradley argues that the evidence was insufficient for the jury to find that Bradley's victim suffered the requisite "serious physical injury" for the First Degree Assault conviction, and that the jury instruction on that charge prevented the jury from intelligently performing its duties. We deny Bradley's requests on appeal and AFFIRM Bradley's conviction.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On April 26, 2016, at a station south of Delaware, Bradley boarded an Amtrak Acela train bound for Boston. When the conductor asked for her ticket, Bradley said that she had already given him one and refused to show it to him again. The conductor then asked for Bradley's identification so that he could determine whether she actually had purchased a ticket, but again Bradley refused to do as requested. The conductor told Bradley that, in order to continue the trip, she would need to help him verify her purchase or buy a ticket in cash, or else disembark at the next stop, Wilmington. But Bradley just walked away and took a seat. When the train arrived in Wilmington, Bradley still had not furnished a ticket or purchased one, and she refused to leave the train, so the conductor called Amtrak police to compel her to disembark.

---

[1] Trial Transcript (Aug. 2, 2017), at A082. Zamarianne Bradley is also known as Jonathan Bradley. Bradley's Opening Br. at 1.

2

Three Amtrak police officers soon approached Bradley's seat in the back of one of the cars and asked her to present a ticket. Bradley refused yet again, but said that her sister had bought her a ticket. The officers still could not corroborate the purchase and again requested that Bradley purchase a ticket or leave the train. And, yet again, Bradley refused to budge. The police officers threatened to arrest her if she did not voluntarily leave the train. Their efforts were to no avail.

The officers told Bradley that she was under arrest, and she then pressed her back to the wall and started to fight the police. She flailed her arms and kicked and punched the officers as they tried to extract her from her seat.[2] She soon threw herself to the floor and continued flailing in the aisle of a train car filled with passengers as the officers struggled to restrain her. Amid the altercation, Officer Shawn Martin ("the Officer"), a uniformed patrol officer, arrived with another Amtrak police officer as backup. The Officer restrained Bradley's left arm while the other officers struggled to handcuff her, and the Officer lost his balance due to a sudden change in the center of gravity as someone fell and pulled him down. As the Officer adjusted to keep himself from falling farther, Bradley's teeth broke through two layers of the Officer's clothing, latched onto his right tricep, and she bit him. The Officer "cried in pain,"[3] and screamed, "I'm bit."[4] Blood starting flowing down his elbow. The Officer later described the pain as "horrendous" and a "burning, grabbing"

---

[2] Trial Testimony of Amtrak Police Officer Shawn Martin (Aug. 1, 2017), at A043 [hereinafter Martin Testimony].

[3] Trial Testimony of Amtrak conductor Horace Fields (Aug. 1, 2017), at A027; Trial Testimony of Amtrak Police Sergeant John Cullinan (Aug. 1, 2017), at A032.

[4] Martin Testimony, *supra* note 2, at A044.

feeling.[5] He darted to the restroom to wash his wound with antiseptic foam because he feared contracting a disease.

While the Officer checked on his wound, Bradley continued fighting the other officers. It took five to six minutes for them to remove Bradley from the train by dragging her on her back by her arms and legs, and they eventually subdued her on a narrow section of the platform after another five to six minutes—all while trying not to fall onto the tracks and risk electrocution.

As was standard operating procedure, separate ambulances were called for the Officer and Bradley. At Saint Francis Hospital, the Officer was prescribed post-exposure prophylaxis, or PEP, to prevent HIV transmission.[6] Two-and-a-half weeks into the regimen, the police learned that Bradley had HIV and Hepatitis C, compelling the Officer to finish the full 28-day treatment cycle, which included a "cocktail" of pills.[7] He testified that "[o]bviously, with any interaction like that, any human bite, you're concerned with disease transmission." "The mouth is a dirty thing."[8]

The Officer further testified at trial that the treatment caused him to feel as much nausea as he did when he had undergone chemo and radiation therapy for a previous illness. He also had diarrhea. He testified that he was unable to have a solid bowel movement for the entirety of the treatment. As of trial, more than a year after Bradley's

---

[5] *Id.* at A047.

[6] Martin Testimony, *supra* note 2, at A047.

[7] *Id.* at A047-48.

[8] *Id.* at A047.

arrest, the Officer retained a scar, including discoloration, from the bite. At trial, the Officer testified that he had not tested positive for HIV, but he was still undergoing testing. He testified that he had to have his blood tested for two years and that doctors could not tell him definitively whether or not he contracted HIV from Bradley.

Amid the scuffle, the Officer also suffered a hip injury, and the pain persisted for days.[9] It turns out that he had torn his labrum, which required surgery. The recovery prevented him from performing his normal work duties for more than a year. He visited the doctor at least fifteen times and completed eight weeks of physical therapy. He testified at trial that he was still experiencing hip pain and had also developed lower back pain from a prolonged period of walking with an "abnormal gait."[10]

A grand jury indicted Bradley on one count of Robbery First Degree, two counts of Assault First Degree, one count of Attempted Assault First Degree, one count of Resisting Arrest, one count of misdemeanor Theft of Services, and one count of misdemeanor Disorderly Conduct.[11] The first count of Assault First Degree (Count II) charged Bradley with intentionally causing serious physical injury to a law enforcement officer by biting him. The second count of Assault First Degree (Count III) charged Bradley with recklessly causing serious physical injury to the Officer's hip while committing or attempting the felony of Resisting Arrest. The Attempted Assault First Degree count (Count IV) charged Bradley with attempting to seriously and permanently disfigure the Officer or permanently

---

[9] *Id.* at A045.

[10] *Id.*

[11] Reindictment (Jan. 23, 2017), at A009-12 [hereinafter Reindictment].

disable a member or organ of his body by biting him while knowing that she had an infectious disease.

A jury trial was held on August 1 and August 2, 2017, and before the jury began deliberations at the end of trial, the trial court gave it the following instruction concerning the definition of "serious physical injury," an element of the crime of Assault First Degree:

> The term 'serious physical injury' means any physical injury which creates a substantial risk of death or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.[12]

The jury convicted Bradley of Assault First Degree for intentionally causing serious physical injury to a law enforcement officer by biting him (Count II) and Resisting Arrest (Count V). Bradley was acquitted on the additional charge of Assault First Degree (Count III) and Attempted Assault First Degree (Count IV). The State had declined to prosecute the charges of Theft of Services and Disorderly Conduct (Counts VI and VII, respectively). The Court *sua sponte* dismissed the Robbery First Degree charge (Count I).[13] This appeal followed.

## II.   ANALYSIS

On appeal, Bradley contends that this Court should reverse her conviction of Assault First Degree (Count II) for two reasons. First, she asserts that, viewing the evidence in the

---

[12] Jury Instructions (Aug. 2, 2017), at A063 [hereinafter Jury Instructions]. Under 11 *Del. C.* § 613(a)(5), a person is guilty of Assault First Degree when "[t]he person intentionally causes serious physical injury to a law-enforcement officer . . . who is acting in the lawful performance of duty . . . ."

[13] *Id.* at A059.

light most favorable to the prosecution, there was insufficient evidence for a rational jury to find that the Officer had suffered a "serious physical injury," as required for conviction. Second, she argues that the trial court's jury instruction for "serious physical injury" constituted plain error because it failed to supply the statutory definition of the term "physical injury" embedded in that instruction. Thus, she appears to suggest that, since the statutory definition of "physical injury" is arguably narrower than the term as used in common parlance, "the jury could not determine whether there was a less serious form of injury for which Bradley may actually have been responsible."[14]

Both of Bradley's arguments fail on appeal. First, reviewing the evidence in the light most favorable to the prosecution, there is a clear basis for a rational jury to conclude that the Officer suffered "serious physical injury" as a result of Bradley's actions.[15] Second, given that Bradley's counsel failed to object to the jury instruction given at trial, we review the trial court's jury instruction for plain error,[16] and will order a new trial only if, after finding error, we deem it to be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[17] Here, the trial court's jury instruction tracked the statutory definition of "serious physical injury" and did not

---

[14] Bradley's Opening Br. at 14.

[15] *See Young v. State*, 610 A.2d 728, 1992 WL 115175, at *1 (Del. 1992) (Table) ("Where a claim of insufficient evidence has been fairly presented to the court below, we will review the trial record and determine whether any rational trier of fact, viewing all the evidence in the light most favorable to the prosecution, could have found every essential element of the offense beyond a reasonable doubt." (citing *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991))).

[16] *Bullock v. State*, 775 A.2d 1043, 1046 (Del. 2001).

[17] *Small v. State*, 51 A.3d 452, 456 (Del. 2012) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

constitute plain error, even without including the statutory definition of the term "physical injury" embedded in that definition.

>    1. *The Prosecution's evidence, including the Officer's scar, was sufficient for a rational trier of fact to find that the Officer had suffered a "serious physical injury."*

Bradley contends that the record was insufficient to support a finding by any rational trier of fact that the Officer suffered a "serious physical injury." As defined in 11 *Del. C.* § 222(26), a "serious physical injury" is a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ, or which causes the unlawful termination of a pregnancy without the consent of the pregnant female."[18]

On appeal, this Court defers to the jury's factual findings because "the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts."[19] Further, we have said that a victim's testimony on the extent of his or her injury is "sufficient by itself" to establish a conviction.[20]

Bradley fails to show that a rational jury could *not* have found that the evidence, viewed in a light most favorable to the prosecution, supports her conviction beyond reasonable doubt. Here, the evidence suggests that a rational jury could conclude that the

---

[18] 11 *Del. C.* § 222(26).

[19] *Morgan v. State*, 922 A.2d 395, 400 (Del. 2007) (citations omitted).

[20] *Williamson v. State*, 113 A.3d 155, 159 (Del. 2015) (citing *McKnight v. State*, 753 A.2d 436, 438 (Del. 2000)).

8

Officer's injury from the bite qualifies as "serious physical injury" because it "cause[d] serious and prolonged disfigurement," tracking the requirements under 11 *Del. C.* § 222(26).[21] In *Baker v. State*,[22] both profuse bleeding and a scar were sufficient for this Court to affirm a jury's finding of a "serious physical injury," and the same holds true here. The Officer testified that, in the midst of the protracted struggle to arrest Bradley, Bradley bit him, and her bite caused him to bleed profusely. The Officer showed the jury the scar on his tricep, still visible more than a year after the attack.

Moreover, upon his arrival at the hospital, medical personnel treated the Officer with a cocktail of PEP pills that caused him to experience nausea. He told the jury that it prompted "such an unwell feeling" that "reminded [him] of when [he] had to go through chemo and radiation" during his treatment for a prior illness.[23] That treatment also caused him to have diarrhea.[24] It is conceivable that a rational jury could find the natural and probable consequences of the bite, which included a scar and discoloration of the skin, as well as nausea and diarrhea from treatment for 28 days, constitute "serious and prolonged disfigurement" or "prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ" that fit within the definition of "serious physical injury."[25]

---

[21] Given that Count II of the indictment only asserted that Bradley caused serious physical injury to the law enforcement officer "by biting him," *see* Reindictment, *supra* note 11, at A010, we consider evidence relating only to injuries stemming from that act in evaluating whether they amount to "serious physical injury" to satisfy that element of that charge.

[22] 344 A.2d 240 (Del. 1975).

[23] Martin Testimony, *supra* note 2, at A048.

[24] *Id.*

[25] *See* 11 *Del. C*. § 222(26). Given that a jury could infer "physical injury" from the bite that left "teeth marks and broke the skin," as in *Moye v. State*, 988 A.2d 937, 2010 WL 376872, at *2 (Del.

Bradley argues on appeal that "the side effects from the prophylactic treatment and the testing involved cannot be considered 'treatment for an actual physical injury,'" and that it was not causally related to any actual injury that the Officer received.[26] She argues further that the State never provided evidence, expert or otherwise, that such treatment was necessary under the circumstances. Thus, Bradley claims no rational trier of fact, viewing the evidence in the light most favorable to the State, could find that Bradley caused the Officer to suffer serious physical injury when she bit him.

We disagree. Because it was not known whether Bradley had any communicable diseases, the hospital treated the Officer by administering the prophylactic treatment regimen.[27] After 17 days, and upon learning that Bradley was both HIV- and Hepatitis C-positive, the Officer was required to complete the full 28-day regimen. The prophylactic treatment was a direct result of Bradley intentionally biting him. A rational jury could

---

2010) (Table), where we affirmed a jury's finding of "physical injury" based on such evidence, it is certainly rational for a jury to conclude that a bite that caused scarring and discoloration that persisted more than a year later constitutes "serious physical injury."

[26] Bradley's Opening Br. at 10 (quoting *In re D.W.*, 186 Cal. Rptr. 3d 464, 474 (Ct. App. 2015)).

[27] Martin Testimony, *supra* note 2, at A047-48. Bradley cites *D.W.*, a California case, to suggest that tests to ensure that the victim was not infected with a communicable disease do not qualify as "treatment for an actual physical injury." *See* Bradley's Opening Br. at 10 (citing *D.W.*, 186 Cal. Rptr. 3d at 472). But, here, the Officer not only had to undergo ongoing *testing* for an infection: he received actual prophylactic medical treatment in the form of actual *medication* that caused painful, physically debilitating side effects such as nausea and diarrhea—conditions that were absent in *D.W.* Moreover, in *D.W.*, the "testing" was the only alleged "injury." The precipitating act was that the defendant spat in an officer's eye, causing redness but no pain. *See D.W.*, 186 Cal. Rptr. 3d at 468. By contrast, in this case, the Officer endured a painful bite that left scarring and discoloration for more than a year later. The issue in *D.W.* was also different as the relevant California statute defined injury as "any physical injury which requires professional medical treatment." *Id.* at 472 (quoting Cal. Penal Code § 243(f)(5)).

certainly conclude that such a treatment is a natural and probable consequence of the bite.[28]

Thus, we reject Bradley's first argument.

> 2. *The Superior Court did not commit plain error when it did not* sua sponte *give an instruction on the statutory definition of "physical injury."*

Bradley's next argument is framed awkwardly. Bradley asserts that the Superior Court erred in its jury instruction on "serious physical injury" by instructing the jurors as follows:

> [T]he term 'serious physical injury' means any physical injury which creates a substantial risk of death or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.[29]

Bradley claims that the trial court "failed to instruct the jury on the complete legal definition of 'serious physical injury,' an element of Assault First Degree as charged in the indictment,"[30] because "at no point in the jury instructions was the jury ever provided the limited statutory definition of the term 'physical injury.'"[31] As we understand Bradley's

---

[28] *See Carlo v. State*, 152 A.3d 123, 2016 WL 7011354, at *3 (Del. 2016) (Table) (citing 11 *Del. C.* § 306(c)(1), which provides that "[a] person is presumed to intend the natural and probable consequences of the person's act," and noting that, while the defendant "may not have intended to cause the specific injuries to Officer Smith's fingers which occurred, it is a reasonable inference that the natural and probable consequence of his conduct would be to cause some physical injury to the officer."). *See also Harris v. State*, 965 A.2d 691, 693 (Del. 2009) ("When Harris ran out of the courthouse, the natural and probable consequence of his conduct was that law-enforcement officers would chase him in an effort to return him to custody. But for Harris's conduct, Wheeler would not have chased after him, fallen down, or broken his leg. Thus, Harris is criminally responsible for causing that injury." (quoting 11 *Del. C.* § 306(c)(1))).

[29] Jury Instructions, *supra* note 12, at A063.

[30] Bradley's Opening Br. at 12.

[31] *Id.* at 13.

argument, the alleged error is that, since the statutory definition of "serious physical injury" includes the term "physical injury," and "physical injury" is a term defined in the Delaware Criminal Code, the trial court also had to instruct the jury on that particular term, "physical injury," but failed to do so.

Because Bradley never objected at trial, we review this alleged error for plain error[32]— a high bar. We order a new trial only if the error compromised the defendant's right to a fair trial.

While a defendant "does have the unqualified right to a correct statement of the substance of the law," a defendant is not, as a general rule, "entitled to a particular instruction."[33] Bradley does not argue that the trial court's jury instruction was not a correct statement of the substance of the law. Moreover, "[a] trial court's jury instructions are not a ground for reversal if they are reasonably informative and not misleading when judged by common practices and standards of verbal communication."[34] Bradley claims that the statutory definition of physical injury —"impairment of physical condition or substantial pain"[35]— was required because it differs from the commonly understood meaning of that term. In a footnote in his opening brief, Bradley argues that although "physical injury" is "not defined in the dictionary," the term "injury" is and is "broader" than "physical

---

[32] Bradley concedes that she did not raise an objection to the jury instructions below and thus we cannot reverse absent plain error. Bradley's Opening Br. at 11.

[33] *Bullock*, 775 A.2d at 1047 (quoting *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983)).

[34] *Burrell v. State*, 953 A.2d 957, 963 (Del. 2008).

[35] 11 *Del. C.* § 222(23).

injury."[36] Bradley claims "the jury was at liberty to assign the term 'physical injury' whatever meaning it wanted."[37]

We reject these arguments, which are raised for the first time on appeal. Bradley offers no support for his contention that the jury was somehow misled. The jury convicted Bradley of Assault First Degree and Resisting Arrest but acquitted her of the other Assault First Degree count (Count III) and the Attempted Assault First Degree count (Count IV). Moreover, Bradley's own counsel, in closing arguments, agreed that the Officer had suffered a physical injury. His counsel stated that, "there's no dispute that's an injury. That's a physical injury."[38] He continued by stating that, "I can't tell you that it's not a serious physical injury," and he told the jury that they had to "decide whether, in fact, it meets the substantial risk of death, prolonged disfigurement, prolonged impairment or function of bodily organ."[39] Based upon the record before us, we do not believe that the jury failed to intelligently perform its duty or that the instructions that were given compromised Bradley's right to a fair trial.

On appeal, Bradley adds another twist by arguing further that "[w]ithout a definition of 'physical injury' the jury could not determine whether there was a less serious form of

---

[36] Bradley's Opening Br. at 13 n.53. Aspects of this argument are arguably waived because they were asserted in a footnote. *See California State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 855 (Del. 2018) (citing Del. Sup. Ct. R. 14(b)(vi)(A)(3)).

[37] *Id.* at 13.

[38] Trial Transcript (Aug. 1, 2017), at A073.

[39] *Id*.

injury for which Bradley may actually have been responsible."[40] But this appears to be a belated and backdoor way of arguing that a lesser included offense instruction should have been given. The parties discussed the possibility of providing an instruction that would allow the jury to find Bradley guilty of Assault Second Degree, which requires mere "physical injury."[41] But Bradley rejected that approach in the proceedings before the Superior Court and agreed with the trial court that it was "pretty clear that this is a serious physical injury or it didn't happen."[42] Bradley acknowledges in her reply brief that she chose to pursue an "all or nothing defense."[43]

Although counsel's agreement as to particular instructions generally "does not excuse the trial judge's duty to give proper instructions,"[44] "Delaware follows the 'party autonomy' approach to lesser-included offenses," where "the burden is entirely on the parties, rather than the trial judge, to determine whether an instruction on a lesser-included offense should be considered as an option for the jury." The rationale underlying this rule "mandates that a trial court - - whether or not it is sitting as a trier of fact - - defer to the parties' decision to address, or to refrain from addressing, a lesser-included offense. That is because it is trial counsel 'who determine trial tactics and presumably act in accordance

---

[40] Bradley's Opening Br. at 14.

[41] 11 *Del. C.* § 612(a)(3) (providing that a person is guilty of Assault Second Degree where "[t]he person intentionally causes physical injury to a law-enforcement officer . . . who is acting in the lawful performance of duty.").

[42] Trial Transcript (Aug. 1, 2017) at A054 (quoting the court).

[43] Bradley's Reply Br. at 3.

[44] *Bullock v. State*, 775 A.2d at 1053.

14

with a formulated strategy.'"[45]   Accordingly, we reject Bradley's attempt to undo her strategic calculation by arguing that the trial court committed plain error by not *sua sponte* issuing a separate jury instruction on "physical injury."[46]

## III.    *CONCLUSION*

For the reasons set forth above, we reject Bradley's contentions on appeal and affirm the jury verdict.

---

[45] *Lewis v. State*, 2016 WL 3453719, at *2 (Del. 2016) (citations omitted).

[46] *Id.* at *2.