Filed 6/15/16  P. v. Parsons CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040812 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. Nos. F25637, F23989 F24466, F25145) |
| v. | |
| JESSE WARREN PARSONS, | |
| Defendant and Appellant. | |

Jesse Warren Parsons challenges his jury conviction for battery on a peace officer with injuries.  He argues that the prosecutor committed prejudicial misconduct by misstating the general intent required to support battery and that misconduct was compounded by the court giving a confusing and misleading jury instruction.  In the alternative, defendant argues that trial counsel was constitutionally ineffective for failing to object to the prosecutor's misleading argument.  Defendant also challenges the sufficiency of the evidence to support the injury element of his battery conviction.  Finding no reversible error, we will affirm the judgment.

# I. TRIAL COURT PROCEEDINGS

## A. THE CHARGES AND DISPOSITION

Defendant was charged in case No. F25637 with battery with injury on a peace officer (Pen. Code, § 243, subd. (c)(2)[1]; count 1), resisting an executive officer (§ 69; count 2), giving false information to a police officer (§ 148.9, subd. (a); count 3, a misdemeanor), possession of drug paraphernalia (Health & Saf. Code, former § 11364.1; count 4, a misdemeanor), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 5), and resisting a peace officer (§ 148, subd. (a); count 6, a misdemeanor). A jury found defendant guilty on all counts.

Defendant was sentenced to three years on count 1 to be served in county jail. The court imposed concurrent 180-day sentences on the misdemeanor counts, and it stayed an eight-month sentence on count 2 under section 654. Defendant was sentenced on count 5 to eight months mandatory supervision under section 1170, subdivision (h)(5)(B), but count 2 was reduced to a misdemeanor after passage of Proposition 47 and the sentence on that count was modified to 120 days concurrent time so that no supervision followed his release from custody.[2]

## B. THE TRIAL

On October 4, 2013, City of Santa Cruz Police Officer Thomas Young was dispatched to East Cliff Drive, responding to a citizen's complaint that two people were

---

[1] Undesignated statutory references are to the Penal Code. Undesignated subdivisions refer to Penal Code section 243.

[2] Defendant was also sentenced on probation violations in case Nos. F23989, F24466, and F25145. Defendant filed notices of appeal from those cases but he has raised no issues regarding them in his briefing. (See Cal. Rules of Court, rule 8.204(a).) We deem those appeals abandoned and will dismiss them. (*People v. Nelms* (2008) 165 Cal.App.4th 1465, 1470.)

sleeping on the cliff.[3] Portions of East Cliff Drive were destroyed in the earthquake, and the thoroughfare was replaced by a footpath to allow pedestrian access between First and Second Avenues. The footpath, flanked by railings, was rutty and narrow. The path was abutted by residences to the north, and remnants of the road along the ocean cliffs to the south.

### 1. Officer Young's Testimony

From the footpath, Officer Young saw two men sleeping on the cliffs. Young climbed over the railing, woke the men, and asked them to move from the cliffs to the path. One of the men followed directly behind Young. The other, defendant, kept his distance and put on his backpack. Young instructed both men to sit on a retaining wall near Second Avenue. Defendant complied, positioning his bike between himself and Young. Defendant identified himself as Justin Peterson with a May 28, 1978 date of birth.[4] Young requested backup because he was suspicious of defendant.

As Young was running defendant's companion through dispatch, Officer Brian Warren arrived. Seeing Warren's car approach, defendant said "oh, shit," threw his bike down in front of Young, and ran westbound toward First Avenue. Young pursued defendant for about 10 or 15 feet before tackling him at the waist. Defendant used the railing to pull himself up and continue running. Young commanded defendant to stop and get to the ground. Young's hands slid down defendant's body as defendant clung to the railing and continued to run. As Young was holding defendant's knees, defendant freed his right leg from Young's grasp and kicked Young in the face. Defendant's kick was hard enough to knock back Young's head, but not hard enough for Young to release his grip. Defendant looked back at Young as he kicked him, and Young saw defendant's

---

[3] Santa Cruz Municipal Ordinance 6.36.010 prohibits camping between 11:00 p.m. and 8:30 a.m.

[4] Defendant's date of birth is April 27, 1977.

face. Young told the supervising patrol sergeant that he had been kicked, he referred to the kick in his report, and he testified at the preliminary hearing that defendant had kicked him. But he made no mention until trial that defendant had looked at him as he was kicked.

Officer Warren overtook the two within a couple of seconds after Young was kicked. At that point Young was holding defendant's left leg somewhere between the knee and the foot. Warren yelled for defendant to get on the ground, positioned himself in front of defendant, and struck him in the back shoulder area to get him to release his grip on the railing. Defendant fell to the ground and continued to resist the officers. He was subdued after tasering by Officer Warren.

Young had significant abrasions on his knees from the rough asphalt. He had a bad abrasion on his knuckle where the pavement had ripped the skin. His forehead was bruised, and his head, right shoulder, elbows, finger, and knees were sore. Young was treated at the scene for his injuries by medics who removed gravel from and cleaned his abrasions and advised him to see a doctor. Concerned with his injuries, Young went directly to the Santa Cruz Occupational Medical Center. His wounds were cleaned a second time, and he was checked for broken bones. He was authorized to return to work on modified duty.

Young took a scheduled week-long fly fishing vacation and used that time to recover. Feeling the effects of the injuries, Young modified his casting technique that week to avoid shoulder pain.

Young returned to Santa Cruz Occupational Medical Center 10 days after the incident. He was still experiencing shoulder and finger pain.

2. **Officer Warren's Testimony**

As he was driving toward East Cliff Drive on Second Avenue, Officer Warren saw defendant jump up and run toward First Avenue. Warren parked his car, called for backup, and joined in the chase. Warren did not see Young grab defendant. He saw

4

Young holding defendant at the waist, and Young's hands sliding from defendant's waist to his knees as defendant continued to pull away. He described Young as having "defendant's legs slightly wrapped up so [defendant's] balance was a little bit altered, which was why the defendant was hanging onto the railing." All Young was doing was keeping defendant from running.

Warren overtook the men and tried to dislodge defendant from the railing by issuing a body blow with his left shoulder to defendant's back. At that point he did not know whether Young still had defendant's legs. Defendant did not release his grip from the railing. Warren struck defendant in the upper back with his fist two or three times, causing defendant to release the railing and fall to the ground. Defendant continued to struggle from the ground, refusing to show his hands. Young shouted at Warren to tase defendant, but defendant was wearing a coat and a sweatshirt, and a taser is ineffective against bulky clothes. After 15 or 20 seconds, defendant's shirt shifted, exposing skin, and Warren deployed taser probes into defendant's lower back. Although he stopped fighting, defendant refused to get on his stomach and show his hands. Warren applied the taser a second time directly to defendant's posterior thigh, and defendant submitted to arrest.

Warren observed fresh cuts on Young's eyebrow and lip, and redness about his face. He located a small plastic bag containing what appeared to be methamphetamine in the route taken by defendant.

### 3.    Physician Assistant Hull's Testimony

Officer Young was examined by physician's assistant Diane Hull at Santa Cruz Occupational Medical Center. Hull performed a medical examination on Young, noting abrasions on his right forehead, right elbow, left forearm, and hands. Young also had bruising on his face and knees. Young told Hull he had been kicked in the face. Gravel and debris were removed from Young's wounds, after which they were cleaned and bandaged. The abrasion to Young's knuckle was deeper than the other abrasions. Hull

5

decided it "didn't really need to be sutured, but it needed to be watched." Young's treatment plan was over-the-counter medication and ice for pain management. Young was placed on modified duty to avoid further impact or reinjury.

At a follow-up visit some 10 days after being injured, Young reported some pain in his right shoulder, which could have been the result of whiplash from being kicked. On cross-examination Hull acknowledged that minor shoulder pain could be consistent with casting a fishing line for a week, and she had no way of knowing the cause of Young's pain. Hull recommended that Young continue using anti-inflammatory medication and ice. Hull recommended Young's return to full duty. Young still had scabbing at his final visit a week later, but the laceration on his knuckle was healing well and he was feeling less pain in his shoulder.

Hull did not consider Young's injuries serious, but Young "absolutely needed medical treatment" to assess the depth of his abrasions and to assess his fitness to return to work.

### 4. Other Evidence

Several photographs of the footpath, cliffs, and Officer Young's injuries were admitted into evidence. The court informed the jury that defendant had been sentenced to 180 days in county jail for a felony offense and, because defendant had failed to turn himself in on August 30, 2013 to serve that sentence, on September 20, 2013 a valid warrant was issued for his arrest. The parties stipulated that defendant ran from Officer Young to evade arrest and that the substance in the plastic bag on the footpath contained a usable amount of methamphetamine.

Defendant rested on the prosecution's evidence.

## II. DISCUSSION

### A. EVIDENCE OF INJURY

#### 1. Legal Standards

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We will affirm a conviction if " ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citations.]" (*People v. Alvarez* (1996) 14 Cal.4th 155, 224, italics omitted.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)

Battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Battery on a peace officer is proscribed under section 243, subdivision (b), and battery on a peace officer causing injury is proscribed under section 243, subdivision (c)(2). Injury as used in subdivision (c) is defined as "any physical injury which requires professional medical treatment." (subd. (f)(5).) In *People v. Longoria* (1995) 34 Cal.App.4th 12, 17 (*Longoria*), the court explained that "the nature, extent, and seriousness of the injury—not the inclination or disinclination of the victim to seek medical treatment," determines whether an injury requires professional medical treatment under subdivision (f)(5). The court characterized that test as "objective and factual." (*Longoria*, at p. 17.) The *Longoria* court rejected the argument rejected the previous year in *People v. Lara* (1994) 30 Cal.App.4th 658 (*Lara*) that a physician's affirmative intervention (or recommendation to affirmatively intervene) was required to establish injury on a peace officer. (*Longoria*, at p. 18.) The court concluded

7

that substantial evidence supported the defendant's conviction, observing that the officer's injuries appeared to have been more serious and incapacitating than those found legally sufficient in *Lara*. (*Ibid*.)

In *Lara*, the defendant broke away from one officer and was tackled by a second officer. The defendant struggled to get away, hitting and kicking the second officer. (*Lara*, *supra*, 30 Cal.App.4th at p. 664.) That officer suffered bruised knees and abrasions to his hands, and he was exposed to the defendant's blood. (*Id*. at p. 667.) Emergency room medical personnel cleaned his wounds, gave him supplies for scrubbing them later, examined his knees for any ligament damage, and treated his knee contusions. (*Ibid*.)

In *Longoria*, the defendant was handcuffed with his back toward the officer, and kicked his foot back striking the officer in the groin. (*Longoria*, *supra*, 34 Cal.App.4th at p. 15.) The officer appeared in a great deal of pain, buckled, and fell to his knees. The defendant fell, pinning the officer's hand between his handcuffs and the floor, cutting and crushing the officer's hand. (*Ibid.*) The officer could not hold his gun, had difficulty unwrapping his holster, and was placed on restrictive duty. (*Id*. at p. 18.)

### 2. Analysis

Defendant argues that insufficient evidence supports the jury's finding that Young suffered injury requiring professional medical treatment under subdivision (f)(5). In defendant's view, the battery occurred when he kicked Officer Young in the face, and the only injuries resulting from that battery were a facial abrasion and contusion. Defendant argues that no rational jury could find that cleaning and bandaging Young's abrasions, coupled with a recommendation to use over-the-counter pain medication and ice, constituted injury requiring professional medical attention.

Defendant overlooks the fact that he undisputedly battered Young by dragging him on the asphalt, and substantial evidence supports a finding that all of Young's injuries were caused by that battery. Young's cuts required cleaning. Medical

8

professionals removed gravel and other foreign bodies from his abrasions before bandaging them. The gash to Young's knuckle was of particular concern and required follow up professional observation. Young was examined for a possible concussion, and he was restricted from impact-related work to avoid reinjury. Young also felt shoulder pain after subduing defendant, and that shoulder pain persisted while he was on vacation.

On this record, a rational jury could conclude that Young's injuries required professional medical treatment. The injuries are similar to those sustained in *Lara*. Although the court in *Lara* noted that the officer had been exposed to the defendant's blood, we do not find that fact critical to the substantial evidence finding in that case, particularly because there was no showing that exposure to the defendant's blood caused any injury. (Cf. *In re D.W.* (2015) 236 Cal.App.4th 313, 327 [no evidence of subdivision (c) injury caused by the defendant spitting in officer's eye].) Nor do we find the fact that the defendant in *Lara* was treated in the emergency room to be a significant distinction because the treatment location did not dictate the severity of his injuries.

## B. PROSECUTORIAL MISCONDUCT AND INSTRUCTIONAL ERROR

### 1. Closing Argument and Jury Inquiries

The prosecutor argued that defendant was guilty of count 2 (resisting an executive officer) based on throwing his bike in front of Officer Young, running, ignoring Young's commands to stop, and by struggling to break away from Young's hold. He argued that the kick to Young's face constituted a battery, while defendant argued that the prosecution had failed to show that the kick was intentional.

The prosecutor introduced the concept of general intent by reciting CALCRIM 250: "A person acts with wrongful intent when he or she intentionally does a prohibited act. However, it's not required that he or she intend to break the law." The prosecutor continued: "Basically, your [*sic*] conscience [*sic*]. You're doing things willfully. So he doesn't have to intend to kick Officer Young in the face. He doesn't

9

have to intend to do the battery-type conduct. It's just general intent. Is he conscience [*sic*], does he know what he wants to. Do I want to move my hand from one place to another. My foot from one place to another. It's a general intent."

During rebuttal, the prosecutor argued that the act of "kicking, taking my leg, bringing it up, and pushing it out" was "the act that's required to be done willingly and on purpose," and that "[n]othing under the law requires that [defendant] intended to kick Officer Young in the face." The prosecutor argued that it did not matter whether defendant looked at Young as he kicked him because "it's a general intent crime, that's how you break the law. You don't have to intend to kick anyone, you have to intend to kick."

During deliberation the jury sent the court two questions directed at the battery charge. The first posed: "Need a deeper definition of the battery law []. If the 'kick' to the officer's face was unintentional does it qualify as "willingness or on purpose.["] For example, if the defendant was thrown off balance by either officer, and as a result the defendants [*sic*] foot hit [O]fficer Young in the face, is that 'willfully' or willingly." The second asked: "If one person initiates contact by grabbing a second person, and the second person pulls the grabbed area of his body away, is the second person's action considered willful touching?" The court responded in writing to the first inquiry: "We will provide you with an additional instruction in open court at 1:30. The attorneys will be permitted to give 5 minutes of argument each related to your question and the new instruction."

Outside the jury's presence, the court stated that it would give the CALCRIM 240 causation instruction which had not been given earlier due to oversight. Before reading that instruction, the court informed the jury that it "probably should have given" the additional instruction initially, and it would permit additional argument for the attorneys

10

to address the new instruction and the jury's concerns. The court read CALCRIM 240,[5] directed the jury's attention to CALCRIM 250 (general intent), CALCRIM 945 (battery with injury against a peace officer), and the prosecutor's burden to prove beyond a reasonable doubt that defendant willfully touched Officer Young in a harmful and offensive manner. The court concluded, "And so hopefully all the instructions together with those that I've indicated, the new instruction, may help you with working out the issues you're having and the questions you've asked."

Addressing the jury's first question, the prosecutor argued: "[W]hat if the kick was intentional. For instance, he was thrown off balance. Can you be held responsible or is that willful. The answer is, yes." Referring to CALCRIM 240, the prosecutor argued that the act or omission causing injury and "start[ing] the cause of action" was the act of fleeing. The prosecutor argued that injury is likely when a wanted man flees the police, and that defendant's failure to submit to Young caused Young's injuries.

Turning to the jury's second question, the prosecutor argued that Young's initial contact with defendant—the tackle—was consensual and did not constitute a battery. But he continued, "as the defendant drags Officer Young down that path, that's unwanted touching. That's a battery. And that's willful. Because what was the defendant's intention, to evade the entire time. [¶] He's responsible for all of the conduct of his evasion. And that includes dragging Officer Young. [¶] Again, when Officer Young tackles him that's not a battery because Officer Young is consenting to that

---

[5] That instruction provided: "An act or omission causes injury if the injury is the direct, natural, and probable consequence of the act or omission and the injury would not have happened without the act or omission. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence. [¶] There may be more than one cause of injury. An act or omission causes injury, only if it is a substantial factor in causing the injury. A substantial factor is more than a trivial or remote factor. However, it does not have to be the only factor that causes the injury."

11

contact. [¶] But Officer Young did not consent, and he specifically said, stop. He did not consent to being dragged down that rocky path, cutting up his knees, his hands, his elbows, and his face. And he absolutely did not consent to being kicked in the face."

Defendant contends that the prosecutor's argument on battery's general intent element constituted misconduct and that misconduct was prejudicial, violating his due process right to a fair trial by lowering the burden of proof. He argues that CALCRIM 240 was improper because it failed to address the jury's concern, it confused and mislead the jury, and it compounded the prosecutor's misconduct.

### 2. Forfeiture

Defendant did not object to the prosecutor's arguments, nor to the CALCRIM 240 instruction. "As a general rule, [a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety. [Citations.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct. [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674, internal quotation marks omitted.) Further, a party forfeits the right to challenge a jury instruction "correct in law and responsive to the evidence" by accepting that instruction in the trial court. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) But we may review any instructional error affecting a defendant's substantial rights without a trial objection. (§ 1259.)

Nothing in the record indicates that an objection would have been futile. Misstatements by the prosecutor could have been corrected had they promptly been brought to the court's attention. (Cf. *People v. Hill* (1998) 17 Cal.4th 800, 821 [unusual circumstances excusing defendant's failure to object to every instance of prosecutorial misconduct].) Accordingly, defendant has forfeited his prosecutorial misconduct claim,

12

and he has forfeited his instructional error claim to the extent it does not implicate a substantial right.

Even viewing defendant's instructional error claim as implicating substantial rights, we find no error because the instruction was proper. There was evidence showing that defendant had committed two batteries on Officer Young—by dragging him on the asphalt and by kicking him in the face. There also was evidence sufficient to raise a reasonable doubt as to defendant's intent to kick Young. Officer Warren described defendant as being off-balance and hanging onto the railing because Young had defendant's legs, and despite opportunities before trial, Young did not disclose that defendant had looked at him as he was kicked. CALCRIM 240 correctly instructed the jury that Officer Young's head injuries could be legally caused by the initial battery if the head injuries were a natural and probable consequence of dragging an officer while being lawfully restrained at the knees by that officer. Given that the jury's inquiry posited a scenario where the defendant kicked Officer Young unintentionally because he had been "thrown off balance," CALCRIM 240 was particularly relevant to address whether the injury resulting from such conduct was legally attributable to the earlier battery.

## C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel's failure to object to the prosecutor's misstatements constituted ineffective assistance. Ineffective assistance of counsel requires a showing that counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "When a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation. When the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation' [citation], the case is affirmed [citation]."

13

(*People v. Babbitt* (1988) 45 Cal.3d 660, 707.)  Prejudice requires a showing "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694.)  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." (*People v. Williams* (1997) 16 Cal.4th 153, 215.)

Battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.)  To establish battery on a peace officer, the prosecutor must prove that "the defendant willfully touched [the officer] in a harmful or offensive manner." (CALCRIM  945.)  A statute proscribing willful conduct describes a general intent offense. (*People v. Johnson* (1998) 67 Cal.App.4th 67, 72.)  "The terms 'willful' or 'willfully,' as used in penal statutes, imply 'simply a purpose or willingness to commit the act …,' without regard to motive, intent to injure, or knowledge of the act's prohibited character. (§ 7, subd. 1.)  The terms imply that the person knows what he is doing, intends to do what he is doing, and is a free agent. [Citation.]  Stated another way, the term 'willful' requires only that the prohibited act occur intentionally. [Citations.]" (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1438.)

The prosecutor argued that defendant did not "have to intent [-]to kick Officer Young in the face" or "intend to kick anyone," but that he only had "to intend to kick." Those are incorrect statements of battery's intent element.  "Willfully" modifies touching.  That means that defendant must have intended to touch Young, not merely move his own limbs.  The intent to kick into thin air is not the same as the intent to touch, and it does not satisfy the intent element of battery.

The prosecutor also misapplied CALCRIM 240 in his argument regarding count 1. We understand subdivision (c)(2) to require that (1) defendant commit a battery against a peace officer, and (2) the battery must proximately cause injury.  CALCRIM 240 addresses the nexus between the battery and the injury; the battery causes an injury if the injury is a natural and probable consequence of the battery.  (See *People v. Jackson*

14

(2000) 77 Cal.App.4th 574, 580 & fn. 2 [explaining proximate cause as "extend[ing] criminal liability to [injury resulting from] the direct, natural and probable consequences of the battery."].)  As we have explained, CALCRIM 240 was relevant to establish the legal injury caused by defendant dragging Young on the asphalt.  But the prosecutor did not confine CALCRIM 240 to defendant's responsibility for all injuries that were the natural and probable consequences of that battery.  Rather, the prosecutor applied CALCRIM 240 to incorrectly argue that defendant's kick constituted a separate battery because that conduct was the natural and probable consequence of earlier unlawful conduct.  Such a misapplication would displace the general intent required to support a battery based on the kick to Young's face.

Even if defendant's trial attorney performed deficiently by failing to object to the prosecutor's incorrect argument regarding the kick and general intent, we find no prejudice.  The jury was instructed that the prosecution had presented evidence of more than one act to prove that defendant had committed battery, and the prosecutor's misstatements were limited to whether defendant willfully kicked Officer Young.  But the prosecutor also argued that defendant had committed a battery when, after disregarding Young's lawful orders to stop, he dragged Young several feet along the rough footpath.  Undisputed evidence established that defendant committed that battery and that Young was injured as a result of that willful and unlawful touching.  Accordingly, defendant has failed to show a reasonable probability that but for counsel's failure to object, he would not have been found guilty of battery on a peace officer with injuries.[6]

---

[6] The Attorney General argues that no prejudice resulted because overwhelming evidence showed that defendant kicked Officer Young "volitionally, not accidently." Like the prosecutor, the Attorney General incorrectly equates a volitional act with a general intent mental state.  A volitional act is merely a conscious act. (*People v. Hardy* (1948) 33 Cal.2d 52, 66.)  Thus, an act can be both volitional and accidental. (*People v. Anderson* (2011) 51 Cal.4th 989, 998 [" 'The accident defense amounts to a claim that

*(Continued)*

We also reject defendant's assertion that the prosecutor's general intent argument undermined confidence in the jury's ability to find (as to count 2) that defendant resisted an executive officer using force or violence.  The prosecutor never suggested that CALCRIM 240 had any bearing on count 2, and he specifically argued that by defendant throwing his bike down in front of Officer Young, dragging Young along the path, and fighting with Young, defendant used force or violence to resist Officer Young, not merely volitional conduct.

## III.  DISPOSITION

The judgment is affirmed in case No. F25637.  The appeals in case Nos. F23989, F24466, and F25145 are dismissed.

---

the defendant acted without forming the mental state necessary to make his or her action a crime.' "].)  As we have already discussed, the evidence was not overwhelming that defendant kicked Young intentionally.

16

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.


_____

Márquez, J.


*People v Parsons*
**H040812**