# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CHRISTOPHER GROTTENTHALER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-12-131 CEB |
| | ) | |
| SVN MED, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted: October 19, 2022
Decided: November 28, 2022

*Upon Consideration of Defendant SVN Med, LLC's Motion to Dismiss*
**DENIED**

Michael W. McDermott, Esquire, and David B. Anthony, Esquire, BERGER HARRIS LLP, Wilmington, Delaware; Bryan J. Wick, Esquire, and Jack Lilley, Esquire, WICK PHILLIPS GOULD & MARTIN, LLP, Dallas, Texas. *Attorneys for Plaintiff Christopher Grottenthaler.*

Blake Rohrbacher, Esquire, and Samuel J. Gray, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Matthew Messerli, Esquire, THE MESSERLI LAW FIRM, Trophy Club, Texas. *Attorneys for Defendant SVN Med, LLC.*

**BUTLER, R.J.**

Plaintiff Christopher Grottenthaler ("Grottenthaler") is a former employee of Defendant SVN Med, LLC ("SVN"). Grottenthaler claims that SVN breached his employment agreement by failing to pay him all the compensation he earned before his termination. SVN has moved to dismiss, arguing that Grottenthaler is not entitled to any payment. The Court finds that Grottenthaler's claim survives the minimal pleading standard for a motion to dismiss. Therefore, SVN's motion is **DENIED.**

## BACKGROUND[1]

### A. The Employment Agreement

Grottenthaler and SVN executed an Employment Agreement[2] in December of 2020. SVN agreed to employ Grottenthaler as "President, Global Services of SVN and any of its subsidiaries."[3] Grottenthaler's duties included using his "best efforts" to comply with "all written policies, rules and regulations of SVN."[4]

Grottenthaler's annual base salary was set at $120,000.00 "less applicable withholdings, payable in accordance with the general payroll practices of SVN."[5] Grottenthaler was also eligible to receive an annual incentive bonus of up to 50% of his base salary "subject to the achievement of goals mutually agreed upon by

---

[1] The Court draws the relevant facts from the exhibits attached to the Defendant's briefs. These exhibits are incorporated by reference into the complaint.
[2] Employment Agreement, Ex. 1 to Def.'s Mot. to Dismiss Am. Compl., D.I. 15 [hereinafter "EA"].
[3] *Id.* § 1.2.
[4] *Id.* § 1.3(c).
[5] *Id.* § 2.1.

2

[Grottenthaler] and either the [compensation] Committee or the Board."[6] The annual incentive bonus was to be "prorated for the number of days during such year that [Grottenthaler] was employed."[7]

## 1. Terms Regarding Termination of Employment

Under the Employment Agreement, Grottenthaler was an "at-will" employee.[8] His severance payment rose or fell depending on whether his termination was with or without cause.[9] But in either case, severance payments were to be made so long as "[Grottenthaler] complie[d] with the conditions set forth in Section 3.2(b)."[10]

## 2. Section 3.2(b)

Section 3.2(b) of the Employment Agreement states that "to receive severance payments," Grottenthaler "must execute and return to SVN . . . a separation agreement containing a mutual release and waiver of claims with respect to [Grottenthaler's] employment, and other customary terms."[11] Section 3.2(b) identifies "mutual non-disparagement, confidentiality of the agreement, confirmation of the covenants contained in Article IV [of the Agreement], etc." as

---

[6] *Id.* § 2.2.
[7] *Id.*
[8] EA § 3.1.
[9] *Id.* § 3.1(b).
[10] *Id.* § 3.2(a).
[11] *Id.* § 3.2(b).

3

examples of "customary terms."[12]  On the other hand, Grottenthaler "shall not be required to release or waive any rights to indemnification or defense he would otherwise be entitled to" or "to compensation earned prior to the effective date of termination or any rights he may have in or relating to any equity position in [SVN]."[13]  The final separation agreement was to be "in form and substance reasonably acceptable to the parties."[14]  Due to subsequent events, no separation agreement was ever executed.

## B.  Grottenthaler's Termination

SVN terminated Grottenthaler's employment on February 23, 2021, less than one month after his date of hire.[15]  The parties agree that Grottenthaler was not terminated for cause, but instead due to "objections to Grottenthaler's involvement" in the management of SVN.[16]

---

[12] *Id.*

[13] *Id.* "[T]he term "SVN" shall be deemed to include Parent and all Subsidiaries." *Id.* § 4.1(f).

[14] EA. § 3.2(b).

[15] Am. Compl., D.I. 11 ¶¶ 17–18 [hereinafter "Am. Compl."].

[16] *Id.* ¶ 19. SVN states that one basis for these objections was the U.S. Department of Justice's complaint against Grottenthaler (and others) "alleging False Claims Act violations based on patient referrals in violation of the Anti-Kickback Statute and the Stark Law, as well as claims otherwise improperly billed to federal healthcare programs for laboratory testing." Def.'s Mot. to Dismiss Am. Compl., D.I. 15 at 1–2 [hereinafter "Def.'s Mot."] (referencing *Justice Department Files False Claims Act Complaint Against Two Laboratory CEOs, One Hospital CEO and Others Across Texas, New York, and Pennsylvania,* U.S. Dep't. of Just. (Apr. 4, 2022), https://www.justice.gov/opa/pr/justice-department-files-false-claims-act-complaint-against-two-laboratory-ceos-one-hospital.)

### 1. Subsequent Draft Separation Agreement

Following his termination, SVN sent a draft separation agreement to Grottenthaler in February 2021.[17]  The draft proposed that SVN, Grottenthaler, and NVS Med Inc. ("NVS")[18] would be parties to the agreement.[19]  NVS was not a party to the Employment Agreement.  Grottenthaler says that making NVS a party to the separation agreement is a primary reason he refused to sign the draft.[20]  Notably, the record is silent on whether Grottenthaler conveyed that reasoning to SVN before filing suit.

## C.  This Litigation

Grottenthaler has sued SVN alleging a single count of breach of the Employment Agreement.[21]  Grottenthaler seeks $130,153.85 in damages, which allegedly represents the sum of his "past-due wages" of approximately $10,000 and "severance pay" of $120,000, which he claims is due under Section 3.2 of the Employment Agreement.[22]

SVN has moved to dismiss the complaint, arguing that Grottenthaler is not entitled to payment.

---

[17] Am. Compl. ¶ 25; Def.'s Mot. at 2.
[18] NVS is not well identified in the pleadings, but it appears to be some sort of surviving entity of SVN.
[19] Separation Agreement, Ex. 2 to Def.'s Mot. [hereinafter "SA"].
[20] Am. Compl. ¶ 25.
[21] *Id.* ¶¶ 32–37.
[22] *Id.* ¶ 28.

**STANDARD OF REVIEW**

SVN's briefs neglect to identify the rule under which they seek dismissal. But SVN uses language insinuating that Grottenthaler's complaint fails to state a claim upon which relief can be granted. The Court therefore use Rule 12(b)(6) as its standard of review.[23]

**A. Motion to Dismiss for Failure to State a Claim**

In considering a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[24] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[25]

Delaware's motion to dismiss standard is "minimal."[26] It asks "whether there is a possibility of recovery."[27] The Court, however, need not "accept conclusory

---

[23] Del. Super. Ct. Civ. R. 12(b)(6).
[24] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[25] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted).
[26] *Cent. Mortg. Co.,* 27 A.3d at 536.
[27] *Garfield v. BlackRock Mortg. Ventures, LLC*, 2019 WL 7168004, at *7 (Del. Ch. Dec. 20, 2019) (citing *Cent. Mortg. Co.,* 27 A.3d at 537 n.13 ("Our governing

allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[28]   The Court may reject "every strained interpretation of the allegations proposed by the plaintiff."[29]

## ANALYSIS

## A. The Complaint is not subject to dismissal.

### 1. The Court finds no condition precedent to wage payment under the Employment Agreement.

There seems very little doubt from the pleadings that SVN has paid Grottenthaler zero compensation for his one month's worth of work.  So the question becomes whether SVN can point to some condition precedent to payment that Grottenthaler failed to satisfy.

The principles of contract interpretation are well-established and grounded on the parties' objective intent at the time of contracting as expressed by the plain language contained within their agreement's four corners.[30]  The Court accords a contract's "clear and unambiguous terms . . . their ordinary meaning."[31]  The

'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'")).

[28] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[29] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[30] *E.g.*, *Fletcher v. Feutz*, 246 A.3d 540, 555 (Del. 2021).

[31] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotation marks omitted).

prevailing contract interpretation must be reasonable.[32]  "[B]ackground facts cannot be used to alter the language chosen by the parties within the four corners of their agreement."[33]  "[I]t is not the job of a court to relieve . . . parties of the burdens of contracts they wish they had drafted differently but in fact did not."[34]

A failure to satisfy a condition precedent may thwart an otherwise ripe breach of contract claim.[35]  "A condition precedent is an act or event, other than a lapse of time, that must exist or occur *before* a duty to perform something arises."[36]  "Under Delaware law, conditions precedent are not favored . . . because of their tendency to work a forfeiture."[37]  A condition precedent must be clear and unambiguous.[38]  "If

---

[32] *See, e.g.*, *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." (internal quotation marks omitted)).

[33] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 820 (Del. 2018).

[34] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

[35] *See Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 (Del. Super. Ct. July 29, 2021); *see, e.g.*, *Lennox Indus. Inc. v. All. Compressors LLC*, 2020 WL 4596840, at *3 & n.15 (Del. Super. Ct. Aug. 10, 2020) (dismissing claim as unripe because claimant failed to undertake compulsory pre-litigation dispute resolution, which was a "condition precedent to litigation" (internal quotation marks omitted)); *cf. Brazen v. Bell Atl. Corp.*, 1997 WL 153810, at *2 (Del. Ch. Mar. 19, 1997) ("[The] claim is not dependent on occurrence of [a] condition precedent, and is, therefore, ripe for adjudication."); *see generally* Restatement (Second) of Contracts § 235(2) ("When performance of a duty under a contract is due *any* non-performance is a breach." (emphasis added)).

[36] *Aveanna,* 2021 WL 3235739, at *25; *see* Restatement (Second) of Contracts § 224 (Am. L. Inst. 1981).

[37] *Aveanna,* 2021 WL 3235739, at *25.

[38] *Id.*

8

the language does not clearly provide for a forfeiture, then a court will construe the agreement to avoid causing one."[39]

SVN points to Section 1.3(c) of the Employment Agreement, requiring Grottenthaler to comply "in all material respects with all applicable laws, and all written policies, rules and regulations of SVN."[40] SVN claims Grottenthaler failed to satisfy the condition precedent to receiving wages because he did not supply a federal Form I-9 to SVN.

While neither side explains more in their briefs, a Form I-9 is apparently a federal form in which one attests to one's eligibility to work in the United States.[41] If a completed I-9 is a condition precedent to receiving wages as a matter of law, no party has pointed the Court to that condition in the contract or in federal law. Perhaps this is why Grottenthaler argues that SVN's Form I-9 argument is just a *post hoc* justification by SVN "to frustrate [his] right to receive wage compensation."[42] SVN says Grottenthaler did not submit a Form I-9 "likely because he was trying to thwart legal enforcement of the type indicated in the DOJ complaint against him."[43] How

---

[39] *QC Holdings, Inc. v. Allconnect, Inc.*, 2018 WL 4091721, at *7 (Del. Ch. Aug. 28, 2018) (internal quotation marks and citations omitted).
[40] EA § 1.3(c).
[41] Def.'s Mot. at 6; *see Employment Eligibility Verification*, USCIS (May 10, 2022), https://www.uscis.gov/i-9.
[42] Pl.'s Opp'n to Def's Mot. to Dismiss Am. Compl., D.I. 18 ¶ 10 [hereinafter "Pl.'s Opp'n"].
[43] Def.'s Mot. at 6.

9

or why not completing the form would "thwart legal enforcement" is not articulated in the pleadings thus far.

While curiosity does make one wonder why the parties are here if the dispute would be resolved with the submission of a form, a Form I-9 is not mentioned in the Employment Agreement and submission of the form as a condition precedent to payment is not articulated. But Grottenthaler's entitlement to wages is. He has not been paid. The language of Section 1.3(c) does not clearly and unambiguously provide for a forfeiture of wages earned in the absence of a Form I-9 and the Court "will construe the agreement to avoid causing one."[44] Grottenthaler thus adequately alleges a right to wages and a failure to pay, resulting in contract damages.

### 2. Grottenthaler's entitlement to separation pay raises questions of fact that cannot be determined at this stage in the pleadings.

Grottenthaler has made out a claim for breach of his employment contract. SVN's motion to dismiss must therefore be denied.

Further arguments are presented regarding Grottenthalers's entitlement to separation pay. These arguments are only important to this motion if Plaintiff has not made out a claim for wages under the Employment Agreement. Since he has, the separation pay issue goes to damages, not the viability of the complaint.

---

[44] *QC Holdings,* 2018 WL 4091721, at *7 (internal quotation marks and citations omitted).

SVN says Grottenthaler is not entitled to separation pay because he did not sign a separation agreement as required by Section 3.2 of the Employment Agreement.[45] Section 3.2(b) references a separation agreement, to be negotiated in due course, and to contain certain provisions and exclude others.[46] The parties agree that SVN sent a draft separation agreement to Grottenthaler, but he did not sign it.[47] Grottenthaler claims SVN failed to tender a separation agreement draft that included the terms required in section 3.2 and he therefore had no duty to sign it.[48] Moreover, the draft added a party—NVS—that was not a party to the original employment agreement, a fact that Grottenthaler calls a "breach" of the Employment Agreement.[49] In turn, SVN says his entitlement to severance pay is not "ripe" because he has not signed a separation agreement.[50]

As noted, Grottenthaler adequately states a claim for breach of the Employment Agreement and for wage damages related to said breach. The parties agree that the pay for Grottenthaler's month of work at SVN is in the ballpark of $10,000. If Grottenthaler is further entitled to separation pay, his damages increase by $120,000.[51] The wrinkle here is that Section 3.2(b) states that, in order to receive

---

[45] EA § 3.2; Def.'s Mot. at 5.
[46] EA § 3.2(b).
[47] Am. Compl. ¶¶ 25–26; *see also* SA.
[48] Am. Compl. ¶¶ 25-26; Pl.'s Opp'n ¶ 10.
[49] Am. Compl. ¶¶ 25-26.
[50] Def.'s Mot. at 5.
[51] Am. Compl. ¶ 21; *see also* EA § 3.2(a).

separation payment, Grottenthaler must execute a separation agreement, which he has not done.[52]

Materiality is predominantly a question of fact.[53]  A material breach by one party may excuse performance by the other party.[54]  Whether SVN's failure to tender a separation agreement that contained the requisite clauses, or whether adding NVS as a party to the separation agreement are "material" breaches of contract which excuse Grottenthaler's duty to execute a separation agreement are not questions that can be decided at this stage of the pleadings.  But on this record, it does not appear that Grottenthaler put SVN on notice of any breach, opting instead to file suit.

---

[52] EA § 3.2(b); *see also* Am. Compl. ¶ 26; Def.'s Mot. at 3.

[53] *E.g., Branson v. Exide Elcs. Corp.*, 645 A.2d. 568, 1994 WL 164084, at *2 (Del. 1994) (TABLE) ("The United States Supreme Court has held that the issue of materiality . . . is a mixed question of law and fact, but predominantly a question of fact, which is not generally suited for disposition by summary judgement."); *IP Network Sol., Inc. v. Nutaxix, Inc.,* 2022 WL 369951, at *11 (Del. Super. Ct. Feb. 8, 2022) ("Delaware courts routinely recognize that materiality is a question of fact that is ordinarily not suited for judgement as a matter of law."); *Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *19 (Del. Super. Ct. Aug. 31, 2006) ("Whether a breach is material is a fact sensitive analysis.").

[54] *E.g., Segovia v. Equities First Holdings, LLC,* 2008 WL 2251218, at *23 (Del. Super. Ct. May 30, 2008) ("The concept of cancelling contracts upon a material breach is well-settled in Delaware law: ['][A] party may terminate or rescind a contract because of substantial nonperformance or breach by the other party. Not all breaches will authorize the other party to abandon or refuse further performance. To justify termination it is necessary that the failure of performance on the part of the other go to the substance of the contract.[']" (internal citations omitted)); *BioLife Sol., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003) ("A party is excused from performance under a contract if the other party is in material breach thereof.").

Discovery may shed further light on the choices made by the parties to better explain whether SVN or Grottenthaler caused the failure to execute the separation agreement.

Given that the "materiality" of a breach of contract is predominantly a question of fact and the limited briefing provided by the parties, the Court finds this issue should be deferred until after trial.[55]  Thus, the Court declines to dismiss the complaint on this basis.

---

[55] *See* Super. Ct. Civ. R. 12(d) (Pleading-stage motions brought under Rule 12 "shall be heard and determined before trial on application of any party, unless the Court orders that the hearing and determination thereof be deferred until trial."); Super. Ct. Civ. R. 12(a)(1) (A court may postpone the disposition of a pleading stage motion "until the trial on the merits."); *Spencer v. Malik*, 2021 WL 719862, at *5 (Del. Ch. Feb. 23, 2021) ("A party does not have a right to a pleading stage ruling . . . Not all disputes can or should be resolved at the pleading stage. Given the importance of the issue presented, the limited briefing provided by the parties, and the early stage of the case, the question… is deferred until after trial. The motion for judgement on the pleadings on this issue is denied on that basis." (internal quotation marks omitted)). Whether a breach is material likewise cannot be readily resolved under the summary judgement standard. The central issues—which party breached the Employment Agreement and whether said breach is material—are best suited for jury determination. *See, e.g.*, *Bradley v. State*, 193 A.3d 734 (Del. 2018) ("[T]he jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons the Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge