Filed 8/19/25  P. v. Williams CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHAWN RANSOME WILLIAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B336340<br>(Super. Ct. No. BA511858)<br>(Los Angeles County) |

Shawn Ransome Williams appeals his conviction, by jury, of carjacking (Pen. Code, § 215, subd. (a)),[1] attempted carjacking (§§ 664/215) and battery with injury on a police officer. (§ 243, subd. (c)(2).)  The trial court sentenced appellant to six years, six months in state prison.  Appellant contends the trial court abused its discretion when it denied his pre-trial motion for mental health diversion and when it declined to instruct the jury

---

[1] All statutory references are to the Penal Code unless otherwise stated.

on the lesser included offense of battery without injury on a police officer.  (§ 243, subd. (b).)  Respondent correctly concedes the latter point.  We reverse the conviction for the felony violation of section 243, giving the People the option to retry that offense or accept a reduction to a conviction for the lesser offense of misdemeanor battery without injury to a police officer.  (*Id.*, subd. (b).)  In all other respects, the judgment is affirmed.

*Facts*

Appellant approached Tadamieka Anderson's car while she was pumping gas. Anderson's mother, Jimmie Burnley, was sitting in the front passenger seat of her car.  Appellant opened the driver's side door and "snatched" Burnley's eyeglasses off of her face.  The two women struggled with appellant, spraying him with gas and hitting him with a small bat.  Eventually, they allowed appellant to take the car and called police from the gas station.  Surveillance video of the incident shows appellant push one of the victims out of the way "a little bit" but does not show him using any other force.  There is no evidence he verbally threatened either victim.

Appellant drove a few blocks before stopping near Rochelle Winn's parked car.  Winn was retrieving some belongings from the back of her vehicle.  Appellant got out of Anderson's car and into Winn's, telling her to give him the keys.  She opened the passenger door, removed her bag and told appellant to "'Give me my stuff.'"  He replied, "'Take your stuff.'"  She opened the back door, took her things and ran to her friend's house with her car keys.  Appellant got out of the vehicle and walked away.

As Los Angeles Police Department officer Jared Barahona and his partner responded to the carjacking report,

they saw appellant walking in the area. Appellant ignored Barahona's instructions to stop. Barahona chased appellant on foot for a short distance before subduing him. Two other officers arrived. Appellant resisted being taken into custody by flailing his body, kicking his legs and trying to turn over rather than remain face down on the ground. After appellant was handcuffed and while the officers were placing him in the patrol car, he forcefully headbutted Officer Barahona. The headbutting left a small laceration above Barahona's left eyebrow. The wound was bleeding. Paramedics sterilized the wound and applied a band aid. Officer Barahona did not receive stitches or other medical attention.

*Motion for Mental Health Diversion*

Prior to trial, appellant moved for mental health diversion as provided in section 1001.36. The motion was supported by an evaluation prepared by Dr. Kimberly Smith, a forensic neuropsychologist. Dr. Smith diagnosed appellant with schizophrenia, major depressive disorder, anxiety disorder, methamphetamine use disorder and a neurocognitive impairment due to a brain injury. The brain injury relates to a gunshot wound appellant suffered to his eye and neck in 2015. The injury put appellant in a coma for five days. Afterwards, he has suffered from post traumatic amnesia and headaches among other things.

Dr. Smith opined that appellant's mental disorders played a significant role in the commission of the charged offenses and that the disorders would respond to mental health treatment. She also opined that appellant did not pose an unreasonable risk to public safety and was a low risk for reoffending if treated in the community.

3

The motion was also supported by a letter stating that appellant had been accepted into River Community, a residential treatment program that would provide treatment for both his mental health and substance abuse disorders. The facility is not a locked facility but it is located in a remote area making it difficult for residents to leave prematurely.

After a hearing, the trial court found that appellant is eligible but not suitable for mental health diversion. In reaching this conclusion, the trial court expressly considered the goals of the mental health diversion statute, the circumstances of the present offenses and and appellant's prior convictions. The court noted its disagreement with Dr. Smith's opinion that appellant presents a low risk to public safety finding, "that there is a substantial likelihood that the defendant presents an unreasonable risk that he will commit a new violent felony as defined . . . section 1170.18."

Distinguishing this matter from the facts of *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*), the trial court emphasized that appellant has a "15-year history of drug use. The court does not have confidence in the defendant's ability to resist using drugs with that kind of history because previous attempts at rehabilitation have been unsuccessful."

In contrast to the defendant in *Whitmill*, who had prior convictions of drug related offenses, the trial court noted that appellant's "criminal history includes three violent felonies and a prior strike offense . . . ."[2] In addition, while the defendant

---

[2] The probation report, however, discloses juvenile adjudications in 2009 for robbery (§ 211) and grand theft. (§ 487, subd. (c).) In 2013, appellant was convicted of burglary (§ 459) and sentenced to two years in state prison. He suffered a 2013

4

in *Whitmill* immediately complied with law enforcement orders, the trial court noted that appellant did not comply with Officer Barahona and instead physically resisted arrest.

The trial court concluded appellant was not "amenable to treatment in the way that the court feels public safety would be met." While it acknowledged that appellant could have been more violent, the trial court characterized the present offenses as violent and concluded that they "evidence[] . . . a pattern of criminal conduct that leads the court to believe there is substantial evidence that the defendant cannot reasonably be expected to be safely treated within the community without a conviction and supervision." Finally, the trial court referenced "the very extensive history of this case," including many pre-trial hearings and appellant's rejection of favorable plea offers from the prosecution.

*Contentions*

Appellant contends the trial court abused its discretion when it denied his motion for mental health diversion because there is no substantial evidence that he will pose an unreasonable risk of danger to public safety within the meaning of section 1170.18. The parties agree the trial court erred when it declined to instruct the jury on the lesser included offense of battery on a police officer without injury.

*Standard of Review*

We review the trial court's decision to grant or deny a motion for mental health diversion for abuse of discretion. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 135 (*Vaughn*).) "A court abuses its discretion when it makes an

conviction for misdemeanor possession of burglary tools and a 2021 conviction of misdemeanor battery. (§§ 466, 242.)

5

arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence . . . ." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449; see also *Vaughn, supra,* at p. 135.)

A trial court is required to instruct the jury, sua sponte, on a lesser included offense "'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' [Citation.]" (*People v. Barton* (1995) 12 Cal.4th 186, 194-195.) We review de novo the question whether the trial court was required to instruct on a lesser included offense, considering the evidence in the light most favorable to the defendant. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)

*Discussion*

*Mental Health Diversion*

Section 1001.36 broadly authorizes the trial court to grant mental health diversion where a defendant meets the statute's eligibility and suitability criteria. (*Sarimento v. Superior Court* (2024) 98 Cal.App.5th 882, 890-891.) The defendant in a criminal case is eligible for diversion if he or she has been "diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which [the defendant is] charged. [Citation.] [A defendant is] suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to

6

public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv). [Citation.]" (*Id*. at p. 891.)

The statute narrowly defines an "unreasonable risk of danger to public safety," by reference to the definition found in section 1170.18. Section 1170.18, in turn, defines "the concept as 'an unreasonable risk that the petitioner will commit a new violent felony within the meaning of' subdivision (e)(2)(C)(iv) of section 667 . . . .'" (*People v. Williams* (2021) 63 Cal.App.5th 990, 1001.) Violent offenses enumerated in section 667, commonly referred to as "'super strikes,'" include "any homicide offense (including any attempted homicide offense), solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, any serious or violent felony punishable by life imprisonment or death, and certain sex offenses." (*Williams, supra,* at p. 1001.)

Even where the defendant meets the statute's eligibility and suitability criteria, the trial court retains some "residual discretion" to deny diversion. (§ 1001.36, subd. (a); *Vaughn, supra,* 105 Cal.App.5th at p. 134.) This discretion is not, however, "unfettered and must be exercised "'consistent with the principles and purpose of the governing law.'"" (*Id*. at p. 135.)

The trial court here concluded appellant was not suitable for mental health diversion because he posed an unreasonable risk of committing a "super strike" if treated in the community. Appellant contends the trial court abused its discretion because there is not substantial evidence of his dangerousness. We are not persuaded.

First, appellant's behavior in the present offenses was violent, even though, as the trial court noted, he could have used more force. Appellant confronted Anderson and Burnely at

7

the gas station, forcing his way into the car and snatching the eyeglasses off of Burnely's face. The circumstances he created could very easily have become deadly, if any of the people involved had been armed. In addition, when confronted by police, appellant fled on foot and then violently resisted being taken into custody. This is another circumstance, created by appellant, that could easily have devolved into a use of deadly force.

In this regard, the trial court's reference to *Whitmill, supra,* 86 Cal.App.5th 1138, is particularly apt. There, although carrying a handgun, the defendant immediately dropped his weapon and complied with instructions when confronted by law enforcement. (*Id.* at pp. 1142-1143.) By contrast, appellant refused to stop walking when ordered to by Officer Barahona. He led the officers on a foot chase and, when finally caught, appellant used his body to fight being taken into custody. The fact that no one was seriously injured during these confrontations seems to have been the product of blind luck in appellant's choice of victims, rather than his choice to avoid or minimize the possibility of harm to others.

Appellant's criminal history also shows a willingness to create circumstances that could very easily result in violence and even death. He has juvenile adjudications for robbery (§ 211) and grand theft from a person (§ 487, subd. (c).) His adult convictions are for felony burglary (§ 459), and two misdemeanors, possession of burglary tools (§ 466) and battery. (§ 242.) These are not "super strikes" within the meaning of section 1170.18 or section 667, subd. (e)(2)(C)(iv). However, both robbery and first degree burglary are classified as serious and violent felonies. (§ 667.5, subd. (c)(9); § 1192.7, subd. (c)(18).) Appellant's willingness to create these volatile situations

8

supports an inference that he could pose an unreasonable risk of danger to public safety within the meaning of section 1001.36, subdivision (c)(4).

The trial court concluded it lacked confidence in appellant's ability to achieve and maintain sobriety. It also concluded appellant was not "amenable to treatment" in a way that would protect public safety. Substantial evidence supports these conclusions. The mental health expert's report indicated that, in addition to his multiple mental illnesses, appellant suffered a serious gun shot wound in 2015 leaving him with a brain injury that required follow-up care. Appellant did not participate in that follow up care until 2019. He then "required intensive tracking to help him manage his medical and psychiatric treatment. [Appellant's] cognitive impairment impacted his ability to effectively keep track of, and manage, his medical and mental health treatment." Even with the assistance of a care coordinator, appellant continued his methamphetamine use and committed the offenses at issue here. The expert also concluded that appellant's severe substance abuse disorder would require "an intense inpatient treatment program" and that he would "likely relapse if he is not in a program." The trial court recognized the risk that appellant would not overcome his decades long substance abuse disorder and would be unable to manage his multiple diagnoses in the community. It did not abuse its discretion when it found that community treatment would not protect public safety.

*Lesser Included Offense*

Appellant contends the trial court erred when it declined to instruct the jury on the lesser included offense of

9

battery without injury to a peace officer.  Respondent correctly concedes the issue.

A criminal defendant is entitled to an instruction on a lesser included offense where "'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*."  (*People v. Memro* (1995) 11 Cal.4th 786, 871, emphasis in original.)  Battery without injury to a peace officer, in violation of section 243, subdivision (b), is a lesser included offense of battery with injury to a peace officer in violation of section 243, subdivision (c)(2).  (*People v. Hayes* (2006) 142 Cal.App.4th 175, 180, fn. 3 (*Hayes*).)  The distinction between the two offenses is whether the peace officer suffered an "injury" within the meaning of the statute.  For this purpose, an "injury" is, "any physical injury which requires professional medical treatment."  (§ 243, subd. (f)(5).)  Thus, if there is substantial evidence from which a reasonable jury could find that appellant committed a battery against a peace officer, but the peace officer did not suffer a "physical injury which require[d] professional medical treatment," appellant is entitled to an instruction on the lesser offense described in section 243, subdivision (b).  (*Hayes, supra,* 142 Cal.App.4th at p. 181; see also *People v. Longoria* (1995) 34 Cal.App.4th 12, 17 [distinction between the two offenses is "objective and factual," and based on the "nature, extent, and seriousness" of any physical injury].)

Here, there is substantial evidence that appellant headbutted Officer Barahona while he was being arrested.  This caused a laceration over Officer Barahona's left eye that was bleeding.  Paramedics arrived at the scene of the arrest.  They sterilized Barahona's wound and "just placed a band aid" on it.

He did not receive any stitches or other medical care for the injury.

A reasonable jury could find, based on this evidence, that Officer Barahona did not suffer an "injury" as that term is defined in section 243, subdivision (f). Consequently, there is a reasonable probability that, had the jury been instructed on the lesser included offense, at least one juror would have voted to convict appellant of that offense. (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 798.) The trial court prejudicially erred in failing to instruct the jury on the lesser included offense defined in section 243, subdivision (b).

The evidence we have summarized, however, would substantially support a finding that appellant committed the lesser included offense of battery without injury on a peace officer. Where, as here, "a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Kelly* (1992) 1 Cal.4th 495, 528.) We will remand the matter for that purpose. (*Hayes, supra,* 142 Cal.App.4th at p. 184.)

*Conclusion*

The judgment is reversed with regard to appellant's conviction of battery with injury on a peace officer. If, after the filing of the remittitur in the trial court, the People do not bring appellant to retrial on the charged offense within the time limit of section 1382, subdivision (a)(2), the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of the lesser included misdemeanor offense of battery without injury on a peace officer in violation of section

11

243, subdivision (b), and shall resentence appellant accordingly. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

12

Kevin P. Stennis, Judge

Superior Court County of Los Angeles

_____

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.